**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CORINA MAY et al.**                                          **CIVIL ACTION**

**VERSUS**                                                            **NO. 13-176**

**RODNEY JACK STRAIN, JR. et al.**                **SECTION: "G"(3)**

## ORDER AND REASONS

Before the Court is Rodney "Jack" Strain, Jr. ("Strain") and Lindsey "Scott" Crain's ("Crain") (collectively, "Officer Defendants") "Motion for Summary Judgment Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure."[1] Defendants Walgreens Louisiana Co. ("Walgreens"), K&B Louisiana Corp. ("K&B"),  Appriss, Inc. ("Appriss"), and the National Association of Drug Diversion Investigators, Inc. ("NADDI") (collectively, "Corporate Defendants") join the Motion for Summary Judgment.[2] Having considered the motion, the response, the reply, the record, and the applicable law, the Court will **GRANT** the motion in part and **DENY** the motion in part.

## I. Background

### A.    *Factual Background*

In 2009, the Louisiana legislature enacted the Ephedrine, Pseudoephedrine, and Phenylpropanolamine Monitoring Act ("LEPPMA").[3] One of the legislative findings included in LEPPMA states: "In order to assist law enforcement and prosecutorial agencies in addressing the

---

[1] Rec. Doc. 87.

[2] Rec. Doc. 100; Rec. Doc. 106.

[3] Rec. Doc. 87-1 at p. 2.

growing problems associated with methamphetamine production, a real time electronic database is needed to record purchases of products containing ephedrine, pseudoephedrine, and phenylpropanolamine at a pharmacy."[4] LEPPMA authorizes instant access to information collected by the Louisiana Department of Public Safety and Corrections from pharmacies in Louisiana to the Louisiana Sheriff's Association and, under some circumstances, to other local law enforcement agencies.[5] Sometime subsequent to the enactment of LEPPMA, Louisiana began to utilize a computer program and database known as the National Precursor Log Exchange ("NPLEx").[6] NPLEx is a multi-state database that is currently used by approximately ten state jurisdictions.[7] According to the Complaint, NPLEx is an electronic tracking service used to track the sale of over-the-counter cold medicines containing pseudoephedrine.[8]

On January 31, 2012, Defendant Crain was participating in surveillance of several pharmacies in Slidell, Louisiana.[9] As part of that surveillance, Crain accessed the NPLEx system on a laptop computer provided to him by Defendant Strain.[10] Crain monitored pseudoephedrine purchases at those pharmacies in real-time.[11] According to the Complaint, he used NPLEx to access the real-time pharmacy records of Corina May ("May") and Joel Weaver ("Weaver") (collectively,

---

[4] *Id.*

[5] *Id.*; Rec. Doc. 102-1 at p. 7.

[6] *Id.* at p. 2.

[7] *Id.* at p. 3.

[8] Rec. Doc. 1 at p. 4.

[9] Rec. Doc. 87-1 at p. 3.

[10] *Id.*

[11] *Id.*

"Plaintiffs"). Based in part on the information that he obtained from the NPLEx system, Crain arrested Plaintiffs.[12] On September 12, 2012, May was convicted of Attempted Creation or Operation of a Clandestine Laboratory, and Weaver was convicted of Accessory After the Fact of Creation or Operation of a Clandestine Laboratory.[13]

**B.    *Procedural Background***

Plaintiffs filed the complaint in this case on January 30, 2013, wherein they allege claims under 42 U.S.C. § 1983  for violations of the Fourth and Fourteenth Amendments, as well as a Louisiana state law claim for privacy rights violations.[14] Officer Defendants filed the pending Motion for Summary Judgment on June 5, 2014.[15]

On June 20, 2014, Defendant Walgreens Louisiana Co. ("Walgreens")  filed a "Motion to Join Motion of Rodney J. 'Jack' Strain, Jr., in His Capacity as Sheriff of St. Tammany Parish, and Detective Lindsey 'Scott' Crain for Summary Judgment."[16] Noting that Plaintiffs did not file any objection to Walgreens' motion, and that the Officer Defendants had no objection to the motion, the Court granted Walgreens' motion on July 15, 2014.[17]

On July 22, 2014, K&B Louisiana Corp. ("K&B"), Appriss, Inc. ("Appriss"), and the National Association of Drug Diversion Investigators, Inc. ("NADDI") (collectively with Walgreens,  "Corporate Defendants") filed a "Motion to Join Motion for Summary Judgment by

---

[12] *Id.*

[13] Rec. Doc. 1 at p. 5; Rec. Doc. 87-1 at p. 3.

[14] Rec. Doc. 1.

[15] Rec. Doc. 87.

[16] Rec. Doc. 90.

[17] Rec. Doc. 100.

Rodney J. 'Jack' Strain, Jr. and Detective Lindsey 'Scott' Crain."[18] Because Corporate Defendants submitted that they conferred with, and received no objection from, all other Defendants, and because Plaintiffs have not filed any objection in the record, the Court granted Corporate Defendants' Motion to Join.[19]

On July 29, 2014, Plaintiffs filed a memorandum in opposition to Defendants' Motion for Summary Judgment.[20] Officer Defendants filed a memorandum in further support on August 7, 2014.[21]

## II. Parties' Arguments

### A.    Defendants' Arguments in Support

Defendants argue that there is no constitutionally-protected right to privacy regarding the purchase of over-the counter ("OTC") medications.[22] Defendants aver that no court, at any level or in any jurisdiction, has yet decided whether use of the NPLEx system by law enforcement constitutes a violation of an individual's Fourth Amendment rights.[23]

Defendants contend that the provisions of LEPPMA, and the resulting use of the NPLEx System, do not constitute a *per se* violation of an individual's Fourth Amendment rights.[24]

---

[18] Rec. Doc. 101.

[19] Rec. Doc. 106.

[20] Rec. Doc. 102.

[21] Rec. Doc. 105.

[22] Rec. Doc. 87-2 at p. 12.

[23] Rec. Doc. 87 at p. 17 (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 223 (5th Cir.), *cert. denied*, 528 U.S. 1022, 1999 WL 812948 (1999)).

[24] *Id.* at p. 11.

Defendants argue that purchasers of OTC medications containing ephedrine, pseudoephedrine, and phenylpropanolamine, which are within the scope of NPLEx's record keeping, are entitled to a lesser expectation of privacy than purchasers of prescription drugs.[25]  Defendants aver that restrictions of access to medical information usually extend to information regarding prescriptions, and "OTC medication[s] are typically less likely to be harmful and less likely to involve the types of serious medical conditions about which privacy concerns become legitimate."[26] Moreover, OTC medications are often sold in grocery stores and pharmacies, and are typically placed on open shelves available to "any one, at any time, for any reason, or for no reason at all."[27] Defendants aver that although they cannot point to authority from this circuit on point, several other courts have addressed concerns about the privacy rights of individuals relative to health information.[28] Because this is apparently a matter of first impression, Defendants argue, there is no clear constitutional violation of the Plaintiffs' privacy rights, a "bedrock concept" of a claim under § 1983.[29]

Defendants raise the qualified immunity defense. According to Defendants, "in the face of the assertion by a defendant public official of the defense of qualified immunity, a § 1983 plaintiff must comply with a heightened pleading standard."[30] This standard, according to Defendants,

---

[25] *Id.* at p. 12.

[26] *Id.*

[27] *Id.*

[28] *Id.* (citing *Felber v. Foote,* 321 F.Supp 85 (D.Conn. 1970); *Ms. B v. Montgomery County Emergency Services, Inc.,* 799 F.Supp. 534 (E.D.Penn. 1992), *affirmed* 989 F.2d 488 (3rd Cir. 1993), *cert. denied* 510 U.S. 860, (1993); *F.E.R. v. Valdez,* 58 F.3d 1530 (10th Cir. 1995); *Hubbs v. Alamao*, 360 F.Supp.2d 1073 (C.D.Cal. 2005)).

[29] *Id.* at pp. 13, 11.

[30] *Id.* at p. 14.

requires claims of specific conduct and actions giving rise to a constitutional violation.[31] Specifically, Defendants argue, Plaintiffs must adequately establish that the Defendants committed a constitutional violation under current law, and that the Defendants' actions were objectively unreasonable in light of the law that was clearly established at the time the actions complained of occurred.[32]

Defendants argue that part of Plaintiffs' burden in rebuttal is to show that Crain knew, or that all officers in his position should have known, that his conduct was violative of Plaintiffs' constitutional right to be free from the purportedly unlawful search and seizure.[33] Even if NPLEx does in fact unconstitutionally invade the privacy rights of individuals, Defendants contend, they cannot be held to have knowledge of it because "how could Det. Crain have had such knowledge when . . . use of NPLEx has never been determined by any court to constitute a violation of constitutional rights?"[34]

Defendants distinguish this case from *State v. Skinner*, wherein, according to Defendants, the Louisiana Supreme Court determined that the necessity for a search warrant was strictly limited to prescription records, not records of OTC medication.[35] Defendants point instead to *Douglas v. Dobbs*, where the Tenth Circuit extended the right of privacy to prescription drug records but

---

[31] *Id.* (citing *Burge v. Stalder*, 54 F. Appx. 793 (5th Cir. 2002); 2002 WL 31845179, *3, citing *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996). *See also Harold v. City of New Orleans*, 2008 WL 5216223, *2 (E.D.La. 2008) (Duval, J.).

[32] *Id.* at p. 14 (citing *Wilson v. Layne,* 526 U.S. 603, 609 (1999); *Palmer v. Johnson,* 193 F.3d 346, 351 (5th Cir. 1999); *Atteberry v. Nocona General Hospital*, 430 F.3d 245, 253 (5th Cir. 2005)).

[33] *Id.* at p. 15.

[34] *Id.* at p. 13.

[35] *Id.* at p. 16 (citing *State v. Skinner*, 2008-2522 (La. 5/5/09); 10 So.3d 1212).

6

rejected the plaintiff's § 1983 claim because the right had not been clearly established at the time.[36] Defendants also assert that Plaintiffs have failed to offer any evidence that Defendants were "deliberately indifferent" to Plaintiffs' constitutional rights as required by the second prong of the qualified immunity defense.[37]

Defendants next argue that "the simple fact that some situations may constitute a technical violation of [the Health Insurance Portability and Accountability Act] does nothing to establish the existence of a constitutional right of privacy."[38] Additionally, Defendants contend, there is a law enforcement exception to HIPAA.[39]

In the alternative, Defendants contend that Plaintiffs' § 1983 claims are barred by application of the *Heck v. Humphrey* doctrine, which, they contend, holds that a § 1983 action cannot be utilized to obtain damages for alleged civil rights violations if doing so would impugn the validity of the plaintiff's underlying criminal conviction arising from the same factual context.[40] According to Defendants, the *Heck* doctrine prohibits a plaintiff from bringing a civil rights claim against a government employee if (1) the plaintiff was convicted of an underlying criminal action, and (2) success in the civil rights claim would require negating a factual element of the criminal conviction.[41] In this matter, according to Defendants, the Plaintiffs were arrested for and pled guilty to offenses related to the crime of "Creation or Operations of a Clandestine Laboratory for the

---

[36] *Id.* (citing *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005), *cert. denied* 546 U.S. 1138 (2006)).

[37] *Id.*

[38] *Id.* at p. 17.

[39] *Id.* (citing 45 C.F.R. § 164.512(f)(2)).

[40] *Id.* at p. 18 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).

[41] *Id.*

Unlawful Manufacture of a Controlled Dangerous Substance," which may be defined as "[t]he purchase . . ., or possession of any material, compound, mixture, preparations, supplies, equipment, or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance."[42]   Defendants argue that the *Heck* doctrine is appropriate here because the Plaintiffs were convicted of felony charges arising from the "exact same facts" as this lawsuit.[43]

Finally, Defendants argue that Plaintiffs' state law claim, which Defendants characterize as a claim of false imprisonment or false arrest, should be dismissed because the arrest was "fully reasonable in nature and occurred in the context of a lawful investigation and detention."[44] Defendants also contend that "[i]n the strictest of alternatives, the plaintiffs' state-law claims [sic] should be dismissed because, once their federal-law claims [sic] have been rejected, no grounds for federal-court jurisdiction [sic] in this matter would remain."

## B.    *Plaintiffs' Arguments in Opposition*

Plaintiffs first argue that Defendants are not entitled to qualified immunity because Plaintiffs can establish that (1) Defendants committed a constitutional violation under current law, and (2) Defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the incident in question.[45]

Plaintiffs submit that their right to privacy under the Louisiana Constitution was violated when information regarding their OTC drug purchases was transmitted from the pharmacies and

---

[42] *Id.* at 19 (citing LSA-R.S. 40: 983; R.S. 40:983A(1)).

[43] *Id.* at p. 20.

[44] *Id.* at p. 22.

[45] Rec. Doc. 102 at p. 5.

8

accessed by the Defendants.[46] Plaintiffs contend that *State v. Skinner* explicitly states that the privacy rights guaranteed by the Louisiana Constitution include medical and prescription information, and that the privacy of all medical information, including but not limited to prescription information, is constitutionally protected.[47] According to Plaintiffs,

> *Skinner*'s clear language puts all officers on notice of their constitutional obligations in obtaining medical information during an investigation and provides them guidance: Obtain a warrant. In so holding, the Louisiana Supreme Court also clearly points out that this right to privacy is broader than the protections provided by the Fourth Amendment to the United States Constitution.[48]

The threshold question to be resolved by the Court, according to Plaintiffs, is whether pharmacy records pertaining to the purchase of pseudoephedrine-containing products fall within the ambit of "medical information" for *Skinner* purposes.[49]  Plaintiffs contend that they do, and that point of sale information constitutes protected healthcare information pursuant to HIPAA.[50] According to Plaintiffs, point of sale information,  including the purchaser's name, address, date of birth, and driver's license information, is collected electronically at the register by a healthcare provider.[51] The information pertains to the provision of healthcare or the individual's medical condition, and therefore falls squarely within the definition of identifiable information as defined

---

[46] *Id.* (citing Article 1 §5 of Louisiana Constitution of 1974).

[47] *Id.* (citing *State v. Skinner*, 10 So.3d 1212 (La. 2009)).

[48] *Id.*

[49] *Id.* at p. 6.

[50] *Id.* at pp. 6–7.

[51] *Id.* at p. 7.

9

by HIPAA.[52] Plaintiffs submit that this is true regardless of whether a prescription is involved.[53] "And, as it falls within the protections of HIPAA because it is medical information, it surely falls within the protections of Article 1 § 5's protections, as set out in *Skinner*."[54] Therefore, Plaintiffs argue, the first prong of the qualified immunity test is satisfied.[55]

Turning to the second prong of the qualified immunity test – objective reasonableness – Plaintiffs contend first that NPLEx is neither recognized nor permitted by Louisiana law.[56] Plaintiffs argue that Louisiana law provides for the creation of a central computer monitoring system to be located within and administered by the Louisiana Department of Public Safety and Corrections, Office of State Police.[57] However, Plaintiffs argue, "no such system exists."[58] Accordingly, it is Plaintiffs' position that the transmission of pharmacy data to NPLEx, which is housed in Kentucky, is unlawful under LEPPMA.[59] Additionally, Plaintiffs aver that although LEPPMA provides that the Department of Public Safety and Corrections is authorized to enter into a cooperative endeavor, agreement, or memorandum of understanding with a Louisiana law enforcement agency, no such agreement actually existed with the Louisiana State Police.[60] Accordingly, Plaintiffs argue,

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at p. 8.

[56] *Id.*

[57] *Id.* at p. 9 (citing La. R.S. 40:1049.4).

[58] *Id.* at p. 10.

[59] *Id.* at p. 10.

[60] *Id.* at p. 11 (citing LSA R.S. 1049.6(B)).

Defendants had reasonable warning that their conduct violated Plaintiffs' rights.[61]

Finally, Plaintiffs argue that *Heck v. Humphrey* is not a bar because the Supreme Court "made clear that[] should a district court determine that a plaintiff's action, if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."[62] Plaintiffs cite *Heck* for the proposition that

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, . . . and especially harmless error, . . . such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful."[63]

Plaintiffs also cite *Mackey v. Dickson*, where the Fifth Circuit purportedly held that "[i]t is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."[64]

## C.   *Defendants' Reply in Further Support*

Defendants reaver that Plaintiffs fail to set out an adequate claim of a constitutionally-protected right.[65] Defendants contend that:

> If the phrase "medical . . . records" as used in Skinner is so broad and inclusive as to encompass OTC medication such as is at issue in this case, then what purpose was served by inserting into the middle of that phrase the words "and/or prescription"? Based on the plaintiffs' analysis, the inclusion of those words in the Skinner holding

---

[61] *Id.* at p. 12 (emphasis in original).

[62] *Id.* at p. 14 (citing 512 U.S. at 486-87) (internal quotation marks omitted).

[63] *Id.* (citing 512 U.S. at 487, n. 7) (internal quotation marks omitted).

[64] *Id.* (citing *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995)).

[65] Rec. Doc. 105 at p. 2.

11

was redundant and totally unnecessary. Why? Because if the phrase "medical . . . records" alone was already broad enough to include OTC medication, then it certainly would have included prescription medications as well. Clearly, what the Skinner court was doing was carefully crafting a limited right of privacy as regards to records created by physicians, hospitals, and other legitimate healthcare professionals, and to specifically include within the scope of that right prescription records.[66]

Next, Defendants argue that Plaintiffs' reliance on HIPAA is without merit. Defendants argue that Plaintiffs rely "on an illogical and unnecessary analytical co-mingling of *Skinner*'s 'medical and/or prescription records' rule with HIPAA's definition of 'medical information.'"[67] Defendants contend that these phrases are not synonymous or interchangeable, and the *Skinner* standard was meant to be construed narrowly.[68] Defendants additionally argue that Plaintiffs ignore the various exceptions to HIPAA's prohibition of disclosure of protected medical information.

According to Defendants, the HIPAA scheme includes an exception for when the disclosure in question was made "as required by law" or "for law enforcement purposes."[69] Defendants argue that both provisions appear to apply in this case because the disclosures in question were "required" by LEPPMA and made "for law enforcement purposes."[70] Defendants cite 45 C.F.R. § 164.512(f)(2) for the proposition that "a covered entity may disclose protected health information in response to a law enforcement official's request for such information for the purposes of identifying or locating

---

[66] *Id.*

[67] *Id.* at p. 3.

[68] *Id.*

[69] *Id.* (citing 45 C.F.R. § 164.512(a); 45 C.F.R. § 164.512(f)).

[70] *Id.*

a suspect . . ."[71]

With respect to the implementation of LEPPMA, Defendants argue that Plaintiffs fail to factually support their contentions that: (1) the Office of State Police has not complied with LSA-R.S. 40:1049(D); (2) personal pharmacy information is "shipped" out of state; and (3) Defendants were aware of these alleged defects in the implementation of LEPPMA.[72] Consequently, Defendants aver, Plaintiffs have failed to meet their burden of proof with respect to the "objectively unreasonable" prong of the qualified immunity test. Defendants additionally question the impact that Plaintiffs' allegations regarding whether there was an agreement between a state agency and a NPLEx operator, or where the NPLEx data is stored, has on the case.[73]

Finally, Defendants reaver that *Heck* bars Plaintiffs' claims. Defendants distinguish the present case from *Mackey*, arguing that it was unclear from the record before the Fifth Circuit whether the plaintiff there had even been tried on, much less convicted of, the charges underlying his arrest.[74] In this case, according to Defendants, evidence obtained by Crain from NPLEx was introduced at Plaintiffs' trial and contributed the "lion's share" of the physical evidence.[75] "Because procurement of that evidence would be tainted by a finding in favor of the plaintiffs in this matter, those convictions clearly would be tainted as well."[76]

---

[71] *Id.*

[72] *Id.* at p. 4.

[73] *Id.*

[74] *Id.* at p. 5.

[75] *Id.* at p. 6.

[76] *Id.*

### III. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[77]   When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[78]   All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[79] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law."[80] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[81]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[82] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[83] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine

---

[77] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[78] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[79] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[80] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[81] *See, e.g., Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[82] *Celotex*, 477 U.S. at 323.

[83] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), cert. denied, 513 U.S. 871 (1994).

issue for trial by presenting evidence of specific facts.[84]  The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied  merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[85] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.

## IV. Law and Analysis

In their Motion for Summary Judgment, Defendants argue that (1) qualified immunity shields them from liability; (2) the *Heck v. Humphreys* doctrine shields them from liability; and (3) Plaintiffs' state law claims are without merit. Because Corporate Defendants have joined Officer Defendants' Motion for Summary Judgment, the Court will consider each argument as applied to each defendant.

Before addressing the specifics of the underlying claims, the Court first notes that Plaintiffs are suing Officer Defendants in their official and unofficial capacities for monetary, declaratory and injunctive relief. However, to the extent that Plaintiffs are seeking monetary damages against Officer Defendants in their official capacities, those claims must be dismissed. Officer Defendants are state employees of the St. Tammany Parish Sheriff's Office.[86] A state employee sued in his official capacity for monetary damages is not considered a "person" subject to suit under 42 U.S.C. § 1983.[87] Additionally, because a claim against a state employee in his official capacity for monetary damages

---

[84] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), citing *Anderson*, 477 U.S. 242 at 248-49.

[85] *Little*, 37 F.3d at 1075.

[86] Rec. Doc. 1 at pp. 1–2.

[87] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Stotter v. University of Texas*, 508 F.3d 812, 821 (5th Cir. 2007); *American Civil Liberties Union v. Blanco*, 523 F. Supp.2d 476, 479 (E.D. La. 2007); *Tyson v. Reed*, No. 09–7619, 2010 WL 360362, at *4 (E.D. La. Jan.21, 2010).

is actually a claim against the state itself, such claims are barred by the Eleventh Amendment.[88]  The foregoing does not apply to the extent that Plaintiffs are asserting claims against Officer Defendants in their individual capacities, or in their official capacities for declaratory or injunctive relief.[89]

## A.    *Qualified Immunity*

"The doctrine of qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[90]  In *Saucier v. Katz*,[91] the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity. Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[92] Part two inquires whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[93] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[94]

The Fifth Circuit states the two prongs of the qualified immunity analysis differently:

First, we determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right.  A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. The applicable law that binds the conduct of officeholders must be clearly

---

[88] *Williams v. Thomas*, 169 Fed. App'x 285, 286 (5th Cir. 2006); *Tyson*, 2010 WL 360362, at *4.

[89] *See American Civil Liberties Union*, 523 F. Supp. 2d at 479.

[90] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[91] *Saucier v. Katz*, 533 U.S. 194 (2001).

[92] *Id.* at 201.

[93] *Id.* at 202.

[94] *See Pearson* 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

established at the time the allegedly actionable conduct occurs. If the first step is met (i.e. the official's conduct violates an established right), the second step is to determine whether the defendant's conduct was objectively reasonable.[95]

Both steps in the qualified immunity analysis are questions of law.[96]

Under the Fifth Circuit standard, the doctrine of qualified immunity protects government officials from civil damages liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question beyond debate.[97] "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably."[98] The law generally disfavors expansive civil liability for actions taken while state officials are on duty because such liability "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."[99] In short, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[100]

A qualified immunity defense alters the usual summary judgment burden of proof.[101] Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated

---

[95] *Wyatt v. Fletcher*, 718 F.3d 496, 502-03 (5th Cir. 2013) (internal citations and quotation marks omitted).

[96] *Id.*

[97] *Id.* at 503 (citing *Morgan v. Swanson,* 659 F.3d 359, 370–71 (5th Cir. 2011) (en banc)).

[98] *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

[99] *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 638 (1987)).

[100] *Id.* (citing *Ashcroft v. al–Kidd,* 131 S.Ct. 2074, 2085 (2011)).

[101] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005)).

clearly established law.[102] The plaintiff bears the burden of negating qualified immunity "by establishing a genuine fact issue as to whether the [officers'] allegedly wrongful conduct violated clearly established law."[103] However, all inferences are drawn in the plaintiff's favor.[104] The Fifth Circuit has instructed that if the applicability of qualified immunity "depend[s] on the outcome of genuine issues of material fact . . . summary judgment on this issue is not proper."[105]

### 1.    Officer Defendants

#### a.    Whether Plaintiffs have alleged a violation of a clearly established constitutional right

When deciding whether the right allegedly violated was "clearly established," the Court asks whether the law so clearly and unambiguously prohibited the conduct that every reasonable official would understand that what he is doing violates the law.[106] "Answering in the affirmative requires the court to be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity.  This requirement establishes a high bar."[107]  When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.[108]

Defendants argue that there is no constitutionally-protected right to privacy regarding the purchase of OTC medications, which, they contend, are typically less harmful and less likely to

---

[102] *Id.*

[103] *Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010).

[104] *Id.*

[105] *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991).

[106] *Wyatt v. Fletcher*, 718 F.3d at 503 (citation omitted).

[107] *Id.* (internal quotation marks and citation omitted).

[108] *Id.*

involve serious medical conditions than prescription medications.[109] Plaintiffs aver that the constitutional right to privacy extends to *all* medical information, including pharmacy records pertaining to the purchase of pseudoephedrine-containing products.[110]

The United States Supreme Court has recognized that individuals have a legitimate expectation of privacy in their *prescription* records.[111] Other courts have also recognized this expectation, under both federal law and state law.[112] Whether this right to privacy extends to OTC medications, however, is less clear because very few courts seem to have addressed this issue.[113]

In *State v. Skinner*, the Louisiana Supreme Court found that the defendant had a reasonable expectation of privacy in her "medical and prescription records" such that a warrant was required for a search and seizure of those records for criminal investigative purposes.[114]  In that case, the district attorney received a tip from a pharmacist that Skinner was obtaining medication with multiple overlapping prescriptions. Based on that tip, the district attorney filed motions for production of prescription and medical records in district court. The district court issued an order requiring eight pharmacies to produce Skinner's records. The district attorney then prosecuted Skinner based on information derived from those records. On appeal, the Louisiana Supreme Court

---

[109] Rec. Doc. 87-2 at p. 12.

[110] Rec. Doc. 102 at p. 6.

[111] *Whalen v. Roe*, 429 U.S. 589 (1977).

[112] *See State v. Skinner*, 2008-2522 (La. 5/5/09), 10 So. 3d 1212,  1218 (listing federal Circuit Court of Appeals decisions concluding that the constitutional right to privacy extends to medical and/or prescription records).

[113] *See, e.g.*, *Pitcock v. Com.*, 295 S.W.3d 130, 135 (Ky. Ct. App. 2009) ("[T]he purchase of over-the-counter pharmaceuticals is not health information intended to remain protected. Over-the-counter medications are dispensed in clearly-marked boxes indicating their contents to the public. Prescription medications, on the other hand, are dispensed in closed bags hiding their contents.").

[114] *State v. Skinner*,  10 So. 3d at 1218 ("Considering the federal jurisprudence and Louisiana's constitutional requirement of a heightened privacy interest for its citizens, we find that the right to privacy in one's medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable.").

held that, absent one of the narrowly drawn exceptions, Skinner's prescription records were protected from warrantless search and seizure as part of a criminal investigation. Because the district attorney failed to obtain a search warrant, the Louisiana Supreme Court concluded that the information obtained from the pharmacies should have been suppressed. The court noted that a majority of the federal Circuit Courts of Appeals have concluded the constitutional right to privacy extends to "medical and/or prescription records."[115]

Plaintiffs argue that *Skinner* established that the privacy of *all* medical information, including but not limited to prescription information, is constitutionally protected.[116] Plaintiffs seem to base this conclusion on the court's repeated use of the phrase "medical and/or prescription records," which, Plaintiffs suggest, indicates that the *Skinner* court intended to protect all medical records, including the subset of medical records that qualify as prescription records.[117] It appears to be Plaintiffs' position that the *Skinner* court identified prescription records as a type of medical record, and accordingly that the *Skinner* holding should extend to OTC records, which Plaintiffs identify as another type of medical record.  Plaintiffs contend that, pursuant to HIPAA, OTC records qualify as "medical records" – and are therefore constitutionally protected under *Skinner* – because they contain information that is "individually identifiable."[118]  In contrast, Defendants argue that if the *Skinner* court intended the phrase "medical records" to be broad enough to include OTC records, then the repeated references to "prescription records" would be redundant.[119]  Defendants further

---

[115] *Id.* at 1217 (citations omitted).

[116] Rec. Doc. 102 at p. 6.

[117] *See id.*

[118] *Id.* at pp. 6–7.

[119] Rec. Doc. 105 at p. 2.

contend that even if OTC records qualify as protected under *Skinner*, the law enforcement exceptions of HIPAA apply to the disclosures in this case.[120]

Plaintiffs provide no authority aside from *Skinner* for the proposition that a right to privacy with respect to OTC records is a "clearly established statutory or constitutional right of which a reasonable person would have known."[121]  No case citing *Skinner* has held that OTC records are protected by a right to privacy.[122]   Neither the Court nor, apparently, the parties can locate any authority showing a clearly established constitutional privacy right that prohibits law enforcement from accessing an individual's OTC records. Regardless of whether the law enforcement exception to HIPAA applies in this case,  Plaintiffs themselves state, "[i]t is questionable that pharmacies and their staff are included and subject to HIPAA as covered entities."[123]

The Court therefore finds that at the time of the events in question, no constitutional right to privacy with respect to OTC records could be described as *clearly established*. Accordingly, the Court finds that Plaintiffs have not alleged a clearly established constitutional right that Defendants have violated, and Plaintiffs have failed to meet their burden of proof with respect to the first prong of the qualified immunity test.

---

[120] Rec. Doc. 105 at p. 3 (citing 45 C.F.R. § 164.512(a), (f)).

[121] *See, e.g.*, *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013).

[122] *See, e.g.*, *Carter v. Com.*, 358 S.W.3d 4, 8 (Ky. Ct. App. 2011) ("We are constrained to hold that Carter had no expectation that her KASPER prescription records were private or subject to Fourth Amendment protection from warrantless search and seizure."); *State v. Wiedeman*, 286 Neb. 193, 212, 835 N.W.2d 698, 712 (2013) ("A patient who has given his or her prescription to a pharmacy in order to fill it has no legitimate expectation that governmental inquiries will not occur.").

[123] Rec. Doc. 102 at p. 7.

### b.      Whether Officer Defendants' conduct was "objectively reasonable"

Since Plaintiffs have failed to meet their burden of negating the first prong of qualified immunity, the Court need not determine whether Officer Defendants' conduct was "objectively reasonable."[124] The Court finds that Officer Defendants are entitled to qualified immunity, and accordingly grants partial summary judgment with respect to Plaintiff's § 1983 claims against Officer Defendants.

### 2.      Corporate Defendants

In their Complaint, Plaintiffs allege that Corporate Defendants were acting in concert with law enforcement and were, therefore, state actors within the meaning of 42 U.S.C. § 1983.[125] Corporate Defendants deny this allegation, but assert that if the Court finds that they are state actors, they would be entitled to qualified immunity for the same reasons that Officer Defendants are so entitled.[126] Corporate Defendants cite no authority for either argument.

A private citizen may be held liable under § 1983 where the plaintiff alleges that the citizen conspired with or acted in concert with state actors.[127] "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."[128] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[129] For a private actor to be held

---

[124] *Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010).

[125] Rec. Doc. 1 at p. 6.

[126] Rec. Doc. 101-1 at p. 4; Rec. Doc. 92 at p. 3.

[127] *Glotfelty v. Karas*, 512 F. App'x 409, 414 (5th Cir. 2013).

[128] *Filarsky v. Delia*, 132 S.Ct. 1657, 1661 (2012) (quoting 42 U.S.C. § 1983).

[129] *West v. Atkins,* 487 U.S. 42, 49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).

liable under § 1983, the challenged conduct must be "fairly attributable to the State."[130]  This means "the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible,  and (2) that the party charged with the deprivation may fairly be said to be a state actor."[131]  A plaintiff can make such a showing by demonstrating that "the private citizen was a willful participant in joint activity with the State or its agents."[132] However, State action will not accrue merely because of government acquiescence or approval of the private entity's actions.[133]

Plaintiffs have failed to explain why they believe Corporate Defendants to be considered state actors, such that they may be held liable for a violation of § 1983. Corporate Defendants have also  failed to brief this issue, and rely instead on conclusory statements that they may be entitled to qualified immunity. However, the law is not established in this Circuit as to whether private entities are entitled to the protections of qualified immunity.[134]

It appears that Corporate Defendants joined Officer Defendants' Motion for Summary Judgment with the expectation that the Court could determine whether  they, as private parties, qualify as state actors and/or are shielded by qualified immunity. However, without proper briefing from Corporate Defendants, the Court is unable to do so. Accordingly, summary judgment with respect to Plaintiffs' § 1983 claims against Corporate Defendants is denied.

---

[130] *Bass v. Parkwood Hosp.,* 180 F.3d 234, 241 (5th Cir.1999) (citation omitted).

[131] *Priester v. Lowndes Cnty.,* 354 F.3d 414, 423 (5th Cir.), *cert. denied* 543 U.S. 829 (2004).

[132] *Id.* at 420 (internal quotation marks omitted) (quoting *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994)).

[133]  *Priester v. Lowndes Cnty.*, 354 F.3d 414, 423 (5th Cir. 2004).

[134] *Walter v. Horseshoe Entm't*, 483 F. App'x 884, 886 (5th Cir. 2012).

**B.**       ***Application of* Heck v. Humphrey *Doctrine***

       *Heck v. Humphrey* prohibits a plaintiff from using a § 1983 suit to challenge the validity of his conviction or sentence, unless the plaintiff demonstrates that the conviction or sentence has in some way been reversed or invalidated.[135]  Having determined that summary judgment is appropriate with respect to Plaintiffs' § 1983 claims against Officer Defendants herein, the Court need not reach the question of whether Officer Defendants are also shielded from liability under *Heck v. Humphrey.*[136] With respect to Corporate Defendants, for the reasons stated above, the Court cannot make a determination based on the current briefings as to whether Corporate Defendants are "state actors" within the meaning of  § 1983.  The Court therefore cannot determine  the applicability of the *Heck v. Humphrey* doctrine to Plaintiffs' claims against Corporate Defendants.

**C.**       ***State Law Claims***

       Defendants contend that Plaintiffs' state law claims should be dismissed because the arrest was "reasonable in nature and occurred in the context of a lawful investigation and detention. Thus, since the arrest in question was fully lawful, the derivative state-law causes of action are without merit."[137]  Additionally, Defendants argue that "the plaintiffs' state-law [sic] claims should be dismissed for the same basic reasons as their § 1983 claims or because there will be no remaining basis for federal-court [sic] jurisdiction."[138] Plaintiffs do not address this argument clearly or directly in their opposition memorandum, though they do contend that Article I, § 5 of the Louisiana Constitution guarantees Plaintiffs a right to privacy against the transmission of their "medical

---

[135] *Heck v. Humphrey*, 512 U.S. 477 (1994).

[136] *Id.*

[137] Rec. Doc. 87-2 at p. 22.

[138] Rec. Doc. 105 at p. 7.

information" from the pharmacies to law enforcement.[139]

### 1.   Officer Defendants

Art. I, § 5 of Louisiana's Constitution protects against unreasonable searches and seizures and, is, therefore, analogous to the federal Fourth Amendment.[140]  "Louisiana applies qualified immunity principles to state constitutional law claims based on "[t]he same  factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983."[141] For the reasons expressed above, Plaintiffs have failed to demonstrate that Officer Defendants are not entitled to the defense of qualified immunity as to their claims under  § 1983 and, accordingly, they have also failed with respect to their claims pursuant to Art. I, § 5 of the Louisiana Constitution. Officer Defendants' motion for summary judgment will be granted as to Plaintiffs' state law claims.

### 2.   Corporate Defendants

For the reasons stated earlier, the Court is unable to determine whether Plaintiffs' state law claims against Corporate Defendants survives summary judgment. Corporate Defendants have not addressed whether they are state actors, or whether they are entitled to qualified immunity. Because

---

[139] Rec. Doc. 102 at p. 5.

[140] *Carter v. St. John Baptist Parish Sheriff's Office*, 2012 WL 1752682, *7 (E.D.La. 2012) citing *Moresi v. Dept. of Wildlife and Fisheries*. 567 So.2d 1081 (La. 1990)  ("Louisiana applies qualified immunity principles to state constitutional law claims based on '[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983.'").

[141] *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005).

the Court cannot make a determination on the briefings before it, summary judgment will be denied

as to Plaintiffs' state law claims against Corporate Defendants.

## V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the "Motion for Summary Judgment Pursuant to Rule

56(b) of the Federal Rules of Civil Procedure" is **GRANTED** as to Plaintiffs' federal and state law

claims against Officer Defendants and **DENIED** as to all claims against Corporate Defendants.


**NEW ORLEANS, LOUISIANA**, this  21st day of October, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**